OPINION
By THE COURT:
In this case, here appealed on questions of law and fact, this court has heretofore held that
(1) Howard Scott, Commissioner of Air Pollution, has not complied with the mandatory duty to prepare and promulgate divisional rules and regulations in compliance with Section 1.3322 of the Codified Ordinances of the City of Cleveland.
(2) The burning of combustible wastes on the lakefront dump constitutes a nuisance and is carried on in violation of State law and the ordinances of the City of Cleveland.
(3) That combustible wastes are deposited on the lakefront dump in violation of city ordinances.
The court withhheld journalizing its ruling pending additional information, realizing that the disposal of waste material bears a relationship to public health and that a methodical and constructive program was necessary to implement its order to forestall any possible breakdown in such activities. The parties were instructed “to assist the court in determining the time and manner of effectuating a complete abatement of the nuisance.”
The City of Cleveland relies entirely upon the construction of an additional incinerator as a practical means of eliminating all burning on its lakefront dump. It reports that although the new incinerator has been authorized by the City Council, the money voted by the citizens of Cleveland and the land for its location appropriated, lawsuits have *3 been filed by taxpayers which are delaying progress in its construction. Upon the building of this incinerator, it is proposed that all combustible waste material will be diverted to and burned in such structure.
The Plaintiff, on the other hand, filed a supplemental brief and furnished the court with material that is comprehensive and authoritative on the subject. It convinces us that it is feasible and practical to dispose of combustible waste on the lakefront dump by other means than by burning, namely, by sanitary landfill. Prom the information contained in this material it appears that the burning of combustible waste on an open dump is as outmoded and oldfashioned as the use of a horse and buggy today would be for transportation; that over 100 cities of Ohio use sanitary landfill methods for the disposal of all waste material; that over 1100 well-known cities throughout the United States have adopted the same method; that the sanitary landfill method is adaptable to all forms of topography and soil texture; that there is no serious problem in employing it on land adjacent to water; that it is specifically available as a method of disposal on the lakefront dump of Cleveland; that the City of Cleveland presently owns suitable equipment to carry on such operations; that qualified personnel from other cities of Ohio and officers of the Board of Health of the State of Ohio have offered their services to the City to help inaugurate such procedure for combustible waste disposal; and that there is no major obstacle to hinder the installation of the sanitary landfill method for disposing of cumbustible waste on the lakefront dump.
The material filed by the Plaintiff comes to us in three categories:
I. Pamphlets and Booklets
II. Letters
III. Affidavits
I. Pamphlets and Booklets
1. An annotated bibliography, 1954-1955, on Refuse Collection and Disposal, by U. S. Department of Health, Education and Welfare, Public Health Service.
2. Clean Up Your Community by Ohio Department of Health, 1953
3. Sanitary Landfill by U. S. Department of Health, Education and Welfare
4. A Three-Part Review of Design, Operational and Economic Criteria of the Sanitary Landfill Method of Refuse Disposal, by U. S. Department of Health, Education and Welfare, Public Health Service
5. Garbage and Refuse, Report No. 17 of The Ohio Municipal League
6. Minimum Regulations for Dumps in the City of Los Angeles
7. Marine Operations of City of New York Department of Sanitation
8. Annual Report, 1955, by City of New York, Department of Sanitation
9. Sanitary Refuse Pills in “Wet” Areas by C. A. Rogus, Director of Engineering, Dept, of Sanitation, New York City
10. Questions and Answers About Sanitary Landfills
11. Disease Killers at Work!
12. Sanitary Landfill, an important Community Benefit
II. Letters
*4 1. Steadman M. Overman, Sanitarian, State of Ohio, Department of Health
2. W. A. Schneider, Director, Department of Public Works, Bureau of Sanitation, Los Angeles, California
3. S. G. Gentile, Deputy Commissioner Administrator, City of Detroit, Department of Public Works
4. Eldon P. Koetter, Sanitary Landfill Representative, Caterpillar Tractor Co.
III. Affidavits
1. Louis E. Bunts, Sanitary Engineer of the Akron Health Department.
2. Paul R. Critzer, Specialist in the planning, organization and equipping of sanitary landfills for municipal and private companies.
3. H. D. Mattison, Jr., Expert in planning landfill operations.
4. Saul Gilmore, who observed and took the license numbers of trucks bringing material to the lakefront dump on Friday afternoon, April 26, 1957.
5. George A. Quigley, a partner in a waste disposal company that operates a dump disposal facility on a contract basis.
The City of Cleveland filed no answer brief nor rebuttal material whatever, either by way of affidavits or otherwise. In argument it stated the difficulties confronting it in the construction of its incinerator and contended that there was no alternative but to continue its burning operation on the lakefront until the incinerator was built.
We are of the opinion that the City’s insistence upon continuing to burn combustible waste material on the lakefront dump is indefensible and that its claim that an emergency exists is without substance. The proof is clear and convincing that other methods of disposing of combustible waste material are available and that they can be made to work on the lakefront dump. The fact that burning has gone on for 50 years has no significance in view of the overwhelming evidence that such method of disposing of combustibles is archaic, outmoded and unnecessary. Moreover, the City conducts these open fires contrary to the very ordinances of the City of Cleveland which it is duty bound to uphold and enforce. It is as well contrary to the laws of the State of Ohio. (Sec. 3767.02 R. C.; Sections 3.5323, 3.5327, 3.5331 and 3.5539 of the Codified Ordinances of the City of Cleveland.) Its position, therefore is untenable —the City of Cleveland is not above the law. We therefore come to the inescapable conclusion that the claim of the defendant City that a state of emergency exists with respect to the disposal of combustible wastes and that as a consequence it is imperative that it continue to burn such material on the lakefront dump until the new incinerator is built is unfounded in view of the clear and convincing evidence that modern, progressive and workable methods are available for such disposal which obviate the necessity of inflicting the discomforts concomitant with the open burning of rubbish upon the people of this community. There is no reason why the thousands of motorists passing this location between East 12th Street and East 49th Street should endure the acrid fumes, noisome smoke and offensive fly-ash belched forth by these open fires.
*5 The affidavit of Saul Gilmore discloses that many privately-owned trucks bring commercial combustible wastes to this dump. This practice offends Section 3.5519 of the Revised Ordinances, which reads:
“Commercial conbustible wastes, other than garbage, shall be hauled to a public incinerator at the expense of the person, firm or corporation producing the same. They shall not be dumped on any public or private dump.”
The City, therefore, cannot continue to receive such material at its lakefront dump.
A journal entry may be drawn in accordance with this opinion. The nuisance shall be abated and the dumping of commercial combustible waste material shall cease by January 1, 1958. Exceptions.
SKEEL, PJ, HURD and KOVACHY, JJ, concur.